26139. ELBERT SALES CO. *v.* GRANITE CITY BANK *et al.*

DECIDED MAY 14, 1937.

*Peyton S. Hawes, Z. B. Rogers,* for plaintiff.
*Clark Edwards Jr., W. D. Tutt,* for defendants.

MacINTYRE, J. A world-war veteran deposited his "payment of benefit" check in the bank, and he (the defendant) did not have any funds on deposit with said bank at the time of making the deposit of his "payment of benefit" check, nor has he deposited other funds with said institution since making said deposit. Section 3 of the act of August 12, 1935, provided: "Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws, nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. Section 4747 of the Revised Statutes and section 22 of the world-war veterans' act, 1924, are hereby repealed, and all other acts inconsistent herewith are hereby modified accordingly. The provisions of this section shall not be construed to prohibit the assignment by any person, to whom converted insur-

ance shall be payable under title 111 of the world-war veterans' act, 1924, of his interest in such insurance to any other member of the permitted class of beneficiaries." It is under this act that the garnishee, the bank, claims exemption of the funds of the veteran, sought to be garnished by a creditor. The plaintiff in error contends, that, "this being a general deposit in a bank, the relationship of debtor and creditor arose, and the deposit lost its identity and ceased to be property originally exempt," and that it was subject to garnishment. Bouvier's Law Dictionary defines *deposit* thus: "A naked bailment of goods to be kept for the depositor without reward, and to be returned when he shall require it. Jones, Bailm., 36, 117; Bellows Falls Bank *v.* Bank, 40 Vt. 380. A bailment of goods to be kept by the bailee without reward, and delivered according to the object or purpose of the original trust. Story, Bailm., § 41; Richardson *v.* Futrell, 42 Miss. 544. A contract by which one of the contracting parties gives a thing to another to keep, who is to do so gratuitously and obliges himself to return it when he shall be requested. See 3 L. R. P. C. C. 101. An irregular deposit [as those with a bank, Bouvier's Law Dictionary, 847], arises where one deposits money with another for safekeeping, in cases where the latter is to return, not the specific money deposited, but an equal sum."

The act of 1935 speaks of "payment of benefits" to veterans, and declares that they should be "exempt before or after receipt by the beneficiary." Under the above statute, the moneys payable to the veteran were unquestionably exempt till they came into his hands, and so long as they continued in his hands. Then, after receipt, when does the exemption cease to remain of force? We have said that if the beneficiary uses money of this character to buy real estate, the money paid as a benefit under the world-war act loses its quality and identity and is transmuted into real estate, and there is an end to the exemption. *McCurry* v. *Peek,* 54 *Ga. App.* 341 (187 S. E. 854). Does the fact that the veteran does not desire to change the quality of the money, or to transmute it into a different kind of property, but wishes to keep the money and use it for his support or the support of his family, and merely for the purpose of safe-keeping puts it in the bank on general deposit, end the exemption? We think not. Was it the intention of the lawmakers, in order for the veteran to avail himself of the

exemption for either a long or short time, to require him to keep his money in hiding, which might not only jeopardize the money itself, as in case of fire, but in many cases would expose the veteran to theft or robbery? Or was it their intention to force the rental of a lock-box in a bank and have the veteran keep the identical money therein? Or to deposit the money under a naked bailment requiring the specific money to be returned on receipt? We think not. On the contrary, it is our opinion the lawmakers intended that he could deposit the money in the usual and customary way in the bank for safe-keeping, and draw it out and use it for his own benefit and to secure the comfort of his family, free from the attack of creditors, even though this might be termed an "irregular deposit," in that no specific money or currency but an equal sum of money in like kind was to be returned on demand to the depositor. The court below was correct in deciding that the moneys were exempt from garnishment. Lawrence *v.* Shaw, — U. S. —, 81 L. ed. 391, — Sup. Ct. —.

The principles announced in headnotes 2 and 3 need no further elaboration.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*